E-filed 9/27/2016

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| KIMBERLY DICKENS,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN COLVIN, Acting Commissioner of Social Security,<br><br>  Defendant. | Case No. 15-cv-3711-HRL<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 20 |
|---|---|

Plaintiff Kimberly Dickens ("Dickens") appeals a final decision by the Acting Commissioner of the Social Security Administration ("the SSA") that denied her application for Disability Insurance Benefits under Title II of the Social Security Act. Each party consented to magistrate-judge jurisdiction, Dkt. Nos. 7, 12, and moved for summary judgment, Dkt. Nos. 19, 20.

**Background**

In August 2011, Dickens filed an application for Disability Insurance Benefits under Title II of the Social Security Act. Dkt. No. 11-3 at 21. Dickens alleged disability beginning on August 30, 2011, due to back problems. *Id.* at 21, 23. After Dickens's claim was denied both initially and upon reconsideration, Dickens received a hearing before Administrative Law Judge Thomas Gaye ("the ALJ") on November 7, 2013. *Id.* The ALJ issued a written decision on January 9, 2014. Dkt. No. 11-3 at 21-44. The ALJ evaluated Dickens's claim of disability using the five-step sequential evaluation process for disability required under federal regulations. *Id.*; *see* 20 C.F.R. §§ 404.1520, 416.920.

The ALJ ruled that Dickens "has not been under a disability, as defined in the Social Security Act, since August 15, 2011, the date the application was filed." Dkt. No. 11-3 at 33. At

step one, the ALJ found that Dickens had not engaged in substantial gainful activity since the alleged onset date of her disability. *Id.* at 23. At step two, the ALJ determined that Dickens had the "severe impairments" of cervical degenerative disc disease and mechanical low back pain from degenerative joint disease of the lumbar spine. *Id.* at 23-26. At step three, the ALJ concluded the impairments or combination thereof did not meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). *Id.* at 26. The ALJ accordingly found that Dickens had the residual functional capacity ("RFC") to perform "medium work," noting only that Dickens "is limited to occasional stooping, kneeling, crouching, crawling, and climbing ladders/ropes/scaffolds." *Id.* As part of step three, the ALJ considered Dickens's allegations regarding the intensity, persistence, and limiting effects of symptoms. *Id.* at 26-32. The ALJ bypassed step four based on his finding that Dickens had no past relevant work experience. *Id.* at 32. At step five, the ALJ considered Dickens's "age, education, work experience, and residual functional capacity" and concluded "there are jobs that exist in significant numbers in the national economy that [she] can perform." Dkt. No. 11-3 at 32-33. The ALJ accordingly found Dickens was not disabled. *Id.* at 33-34. The Appeals Council denied Dickens's request for review, and the ALJ's decision became the final decision of the Commissioner. *Id.* at 2-8. Dickens now seeks judicial review of that decision.

## Legal Standard

This court has jurisdiction to review the Commissioner's decision to deny benefits, 42 U.S.C. § 405(g), but "federal court review of social security determinations is limited," *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). The court may disturb the Commissioner's decision only if it is not supported by "substantial evidence" or if it is based upon the application of improper legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering both "evidence that supports and evidence that

detracts from the ALJ's determination." *Drouin v. Sullivan*, 956 F.2d 1166 (9th Cir. 1992). If the evidence "is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld." *Moncada*, 60 F.3d at 523.

An ALJ must address a claimant's subjective symptoms. "When an ALJ determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).

**Discussion**

Dickens argues the ALJ: (1) wrongly discounted the opinions of two treating physicians;[1] (2) "unreasonably discredited" her testimony; (3) impermissibly disregarded her alleged mental impairment; and (4) improperly ignored "uncontradicted evidence of worsening." Dkt. No. 19 at 11, 13. The court rejects each of Dickens's arguments and grants the SSA's motion for summary judgment.

Dickens first argues the ALJ improperly discounted the opinions of two doctors as it conducted its RFC analysis. Dkt. No. 19 at 7-11. Dr. Helman is a neurologist who examined Dickens ten times in 2013. Dkt. No. 11-11 at 124-41. Dr. Prysi is a physician who examined Dickens once on September 16, 2011. *Id.* at 76-77. Each wrote an opinion that the ALJ afforded "very limited weight." Dkt. No. 11-3 at 31. When the opinion of a doctor who examined a

---

[1] Dickens titles her first argument, "The Decision Weighted Medical Opinions Contrary to the Law and Facts." Dickens "[n]ote[s]" that the ALJ's RFC analysis is "different from" the "narrative discussion and function-by-function evaluation requirements" in SSR 96-8p, Dkt. No. 19 at 8, but makes no attempt in her opening brief to explain what those "narrative discussion and function-by-function evaluation requirements" are or how they might apply in this case. Instead, Dickens focuses for the next three pages on arguing that the ALJ was wrong to discount the opinions of two treating physicians. *Id.* at 8-11. The SSA responds that the entire first argument should be deemed waived due to a near-total lack of meaningful analysis. Dkt. No. 20 at 3-4. Dickens admits in reply that her first argument, including its title, "may have been insufficiently clear," and she subsequently attempts to expand her initial argument into a broader attack against the validity of the RFC analysis. Dkt. No. 23 at 1-5. The court rules that Dickens's opening brief fairly raised the issue of whether the ALJ wrongly discounted the opinions of two physicians, but failed to fairly raise the issue of whether the ALJ complied with SSR 96-8p. The court therefore rejects Dickens's attempt in her reply brief to expand the scope of her first argument.

1   claimant "is contradicted by another doctor's opinion, an ALJ may only reject it by providing
2   specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of*
3   *Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). An ALJ can satisfy this requirement by "setting
4   out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his
5   interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir.
6   2014).

   The ALJ has done so here. After examining Dickens ten times over the course of 2013, Dr. Helman completed a Physical Residual Functional Capacity Questionnaire about Dickens's condition in December 2013. Dkt. No. 11-11 at 119-123. The ALJ discounted this opinion because it was inconsistent with "the emergency room provider's clinical findings" and the "consultative examiners' clinical findings." Dkt. No. 11-3 at 31. Dr. Helman indicated, for instance, that Dickens could not "lift and carry" any amount of weight. Dkt. No. 11-11 at 121. This contradicts reports by several emergency room providers who treated Dickens and found her to have normal motor function. *See*, *e.g.*, Dkt. No. 11-9 at 44 ("sensation & motor nml"), 75 ("She appears to be grossly intact with no motor or sensory deficits."); Dkt. No. 11-10 at 8 ("Motor strength is 5/5 throughout."), 45 ("No numbness or weakness."; "Well-developed, well-nourished female in no apparent distress."). These emergency room reports describe a wide range of other ailments in great detail, but make no mention of any lack of normal upper-body strength. Dr. Helman's report also directly contradicts the report of consultative examiner Fernando Tuvera, who described Dickens's "[m]aximum lifting and carrying capacity [a]s 50 pounds occasionally and 25 pounds frequently." Dkt. No. 11-10 at 93. The ALJ considered this large amount of "conflicting clinical evidence" and the brief duration of Dr. Helman's relationship with Dickens and reached a rational conclusion regarding his opinion testimony—that it would receive only "very limited [evidentiary] weight." Dkt. No. 11-3 at 31.

   The ALJ also appropriately discounted Dr. Prysi's opinion from September 2011. An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Dr. Prysi's opinion is all three: it is two pages long, primarily offers the

4

legal conclusion that Dickens is "unable to work," and cites no clinical findings to support its assertions about how much weight Dickens can lift and how many hours per day she can sit. *See* Dkt. No. 11-11 at 76-77. The ALJ decided to assign the opinion little evidentiary weight after considering: (1) the opinion's "poorly supported check-the-box format"; (2) the lack of any evidence suggesting "Dr. Prysi had a longitudinal treatment history with the claimant"; (3) and conflicting clinical evidence. Dkt. No. 11-3 at 31. The undersigned is therefore satisfied that the ALJ duly exercised his discretion to discount Dr. Prysi's opinion as "brief, conclusory, and inadequately supported[.]" *See Thomas*, 278 F.3d at 957.

Dickens offers another criticism of the ALJ's analysis of these two opinions: she refers to Dr. Helman as a "treating neurologist" and Dr. Prysi as a "treating physician" and takes issue with the fact that the ALJ appears to disagree with those characterizations. Dkt. No. 19 at 4, 10; Dkt. No. 11-3 at 31 ("Dr. Helman only examined the claimant a few times between January and November 2013 and there is no evidence that he offered any treatment."). Dickens is correct that the Ninth Circuit "distinguish[es] among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison*, 759 F.3d at 1012. But the distinction does not matter here; the same "substantial evidence" standard of review applies when an ALJ rejects the opinion of either a treating physician or an examining physician. *Ryan*, 528 F.3d at 1198. As discussed, the ALJ discounted both Dr. Helman and Dr. Prysi's opinions on the basis of rationally interpreting substantial evidence, so this court will not disturb those decisions.

Second, Dickens argues the ALJ "unreasonably discredited" her testimony regarding her condition. Dkt. No. 19 at 11-12. The court notes that the SSA issued a recent ruling "eliminating the use of the term 'credibility' from [its] sub-regulatory policy." SSR 16-3p (Mar. 16, 2016); *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("The governing Social Security rulings . . . are to be relied upon as precedents in adjudicating cases[.]"). Social Security Ruling 16-3p directs ALJs to focus on "subjective symptom evaluation" rather than opening "an examination [into] an individual's character." *Id.* An ALJ's decision "must contain specific

reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* ALJs may not simply "make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" *Id.* To survive judicial review, an ALJ's decision to reject a claimant's symptom testimony must contain "specific, clear, and convincing reasons" for doing so. *Brown-Hunter*, 806 F.3d at 488-89.

Here the ALJ provided "specific, clear, and convincing reasons" for rejecting Dickens's testimony related to her symptoms associated with spinal disorders. *Brown-Hunter*, 806 F.3d at 488-89; SSR 16-3p. Both of Dickens's impairments are "[d]isorders of the spine," which are covered in § 1.04 of the Listing of Impairments.[2] At her November 2013 hearing before the ALJ, Dickens testified that she experienced pain that "starts from [her] lower back and hits [her] legs." Dkt. No. 11-3 at 76. She also reported an inability to lift anything over five pounds and an inability to stay seated or stand for more than half an hour. *Id.* at 76, 78. All three of these symptoms are present in the CFR listing on spinal disorders (as "neuro-anatomic distribution of pain," "muscle weakness," and "the need for changes in position or posture more than once every 2 hours," respectively). Listing of Impairments § 1.04. The ALJ rejected Dickens's pain testimony as inconsistent with a January 2013 doctor's report indicating that her back pain "does not radiate into [her] legs." Dkt. No. 11-3 at 30; Dkt. No. 11-11 at 53. Dickens's two statements regarding whether her pain radiates into her legs are therefore directly at odds, and the ALJ rationally credited the prior statement Dickens made to a medical professional over the later statement made during the hearing before the ALJ. The ALJ also rejected her muscle weakness and posture-changing testimony based on the contrary reports of emergency room physicians.

---

[2] This section lists various symptoms for these types of spinal disorders, including "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Listing of Impairments § 1.04.

Dkt. No. 11-3 at 27.  The record indicates that Dickens received medical treatment for various ailments on at least five different occasions in the two years before she consulted with Dr. Helman.  *See* Dkt. No. 11-8 at 7; Dkt. No. 11-9 at 5; Dkt. No. 11-10 at 63; Dkt. No. 11-11 at 46, 49.  The ALJ reasoned, again rationally, that Dickens's muscle weakness and posture-changing testimony was not likely to be true, because those prior care providers noted neither that Dickens suffered discomfort from sitting nor that she suffered from any muscular weakness in her upper body.  Dkt. No. 11-3 at 30.  The ALJ therefore provided specific, clear, and convincing reasons to support his decision to reject Dickens's subjective symptom testimony.

Dickens argues that the ALJ's discussion of the claimant's history of drug use indicates that he "willfully misread" evidence in the record.  Dkt. No. 19 at 11.  Dickens is incorrect; the claimant's testimony about her history with drugs simply has no effect on the ALJ's step-three determination of nondisability, as it provides no information about a "subjective symptom."  *See* SSR 16-3p.  The ALJ recognized this and noted specifically that "the claimant's drug and alcohol abuse [was] not material to [his] finding of non-disability."  Dkt. No. 11-3 at 30.  Dickens also raises a number of other instances of the ALJ allegedly "manufactur[ing]" an "inconsistency" to "unreasonably discredit" her testimony.  Dkt. No. 19 at 11-12.  These include the ALJ's analysis of: (1) Dickens's testimony regarding the source of her disability (back problems or diabetes); (2) her allegations of falling; (3) evidence that Dickens waited for several years to seek follow-up assistance from a primary-care physician after receiving several referrals; (4) her "inconsistent work history"; and (5) certain evidence of "pain medication-seeking behavior."  Dkt. No. 19 at 12.  Dickens argues that generally these facts do not go to credibility and that in any event the ALJ misinterprets them to unfairly impugn Dickens's character.  *Id.*  The undersigned disagrees; rather, the ALJ focused this factual analysis on whether record facts tended to suggest that Dickens's symptom testimony was incorrect.  For example, the ALJ found it "reasonable to conclude that the claimant's [subjective] symptoms were not [as] bad [as she claimed]" because she repeatedly received emergency-room treatment, received referrals to low-cost long-term care providers, and then failed to follow up on the referrals, Dkt. No. 11-3 at 27.  Similarly, the ALJ found it "reasonable to conclude that the claimant's symptoms were not that bad if she declined physical

1   therapy," *id.* at 28.  These are logical and persuasive interpretations of evidence, not "willful
2   misread[ings]" of the record.  The undersigned is therefore satisfied that the ALJ duly rejected
3   Dickens's subjective symptom testimony for specific, clear, convincing reasons supported by
4   substantial evidence on the record.

5   Third, Dickens argues the court should reverse the agency's decision because of the ALJ's
6   "refusal to find severe mental impairment."  Dkt. No. 19 at 12.  The SSA argues that Dickens
7   "labors under a misapprehension as to step two of the sequential evaluation" and that "the law
8   does not require the ALJ to rule piecemeal on the severity of each alleged impairment."  Dkt. No.
9   20 at 5.  The court agrees with the SSA.  "[T]he step-two inquiry is a de minimis screening device
10  to dispose of groundless claims."  *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  To
11  determine what constitutes a "severe" impairment at step two, "the ALJ must consider the
12  'combined effect' of all the claimant's impairments without regard to whether any such
13  impairment, if considered separately, would be of sufficient severity."  *Howard ex rel. Wolff v.*
14  *Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); 20 C.F.R. § 416.923.  The ALJ did so here and
15  determined in step two that Dickens had the "severe impairments" of cervical degenerative disc
16  disease and mechanical low back pain from degenerative joint disease of the lumbar spine.  *Id.* at
17  23-26.  Any error in step two would be harmless to Dickens, as her claim moved past that step to
18  the remainder of the sequential evaluation process.

19  Finally, Dickens argues the ALJ impermissibly "ignored uncontradicted evidence of
20  worsening."  Dkt. No. 19 at 13-14.  Dickens focuses on statements the claimant made to Dr.
21  Helman regarding her condition, *id.* at 13, and reiterates her argument, already discussed and
22  rejected by the court, as to why his opinion should receive more weight than any contrary
23  evidence on the record.  She also claims there has been a "kind of global violation of the isolating-
24  convenient-quanta-of-evidence principle and its corollary disregard of inconvenient evidence
25  [sic]."  Dkt. No. 19 at 14.  Beneath the embellished language, this is little more than a general
26  assertion that Dickens disagrees with the ALJ's ultimate choice of how to interpret the record.
27  Here, as in her other arguments, Dickens offers alternative ways to interpret evidence.  Dkt. No.
28  13.  But the "evidence [here] is susceptible to more than one rational interpretation," and so "the

8

ALJ's [rational] conclusion . . . must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## Conclusion

The ALJ's decision to deny disability benefits to Dickens is supported by substantial evidence and free of legal error. The court denies Dickens's motion for summary judgment and grants the SSA's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: 9/26/2016

_____
HOWARD R. LLOYD
United States Magistrate Judge